**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION**

| | |
|---|---|
| USI INSURANCE SERVICES LLC, <br><br> Plaintiff, <br><br> v. <br><br> LESLEY BENTZ, ASHLEY FARTHING, DANIEL WERNER, JARED FISHER, and MARTIN FISHER <br><br> Defendants. | Case No. _____ <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff USI Insurance Services LLC ("USI"), by counsel, for its action for damages against Defendants Lesley Bentz ("Bentz"), Ashley Farthing ("Farthing"), Daniel Werner ("Werner"), Jared Fisher, and Martin Fisher (collectively, the "Terminating Employees"), hereby alleges and states as follows:

## PARTIES

1.      USI is a Delaware limited liability company with its principal place of business in New York. USI is a leading insurance brokerage.

2.      Upon information and belief, Bentz is a citizen of North Dakota and resides at 3916 Kingston Drive, Bismarck, North Dakota 58503.

3.      Upon information and belief, Farthing is a citizen of North Dakota and resides at 603 Mustang Drive, Bismarck, North Dakota 58503.

4.      Upon information and belief, Jared Fisher is a citizen of North Dakota and resides at 4521 11th St. W., West Fargo, North Dakota 58078.

5.      Upon information and belief, Martin Fisher is a citizen of North Dakota and resides at 4473 66th Street South, Fargo, North Dakota 58104.

6.      Upon information and belief, Werner is a citizen of North Dakota and resides at 938 Southport Loop, Bismarck, North Dakota 58504.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

8.      This Court has personal jurisdiction over the defendants because, upon information and belief, each and every defendant is a resident of North Dakota and resided in North Dakota during the events giving rise to the claims in this Complaint.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) as all of the defendants reside in this District and all (or substantially all) of the events or omissions giving rise to the claims set forth in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

10.      USI provides a full range of insurance, risk management, and other related services.

11.      USI employs a team of insurance brokers called "producers" to identify, solicit, and service its clients.

12.      USI's producers are provided with leads, training, education, business development opportunities, financial support, access to insurers and underwriters, and infrastructure to support these efforts.  USI employs a team-selling environment in which producers cross-sell products and services across different product categories.

13.      USI regularly conducts repeat business with its clients.  For example, when a policy

is set to expire, USI works with the client to evaluate renewal options.  USI also works with its clients to identify cross-selling opportunities and place other types of insurance.

14.    An important part of USI's business is the relationships and goodwill that it forms with its clients.  These relationships and goodwill are developed by hiring and training skilled personnel (especially producers), and through those producers, identifying and satisfying client needs, and otherwise developing a solid reputation in the business community.  USI relies on its producers to develop client relationships for the benefit of USI by encouraging repeat business, cross-selling other USI products, and obtaining referrals.

15.    Effective May 3, 2014 ("Effective Date"), USI purchased a number of small regional offices from Wells Fargo & Company ("Wells Fargo") as part of an asset purchase sale (the "Sale"), which were converted into USI offices upon closing.

16.    Bentz, Farthing, Werner, Jared Fisher, and Martin Fisher were employees of the regional Wells Fargo offices located within North Dakota purchased by USI as part of the Sale.

A.    **Producers Werner and Jared Fisher**

17.    In conjunction with the closing of the Sale, USI offered Werner and Jared Fisher positions as producers at USI, with Werner taking the title of Senior Sales Executive Commercial and Jared Fisher assuming the role as Insurance Sales Associate. The positions USI offered to Werner and Jared Fisher were in the same capacity and working with the same clients as they had for Wells Fargo.

18.    Both Werner and Jared Fisher's offers were contingent upon their respective acceptance of certain terms and conditions set forth in certain employment agreements each dated as of the Effective Date of the Sale. A true and correct copy of the contract executed by Werner (the "Werner Producer Agreement") is attached as <u>Exhibit A</u>, and a true and correct copy of the

contract executed by Jared Fisher (the "Jared Fisher Producer Agreement") is attached as <u>Exhibit</u> <u>B</u>, (collectively the "Producer Agreements").

19.     By voluntarily entering into the Producer Agreements, Werner and Jared Fisher acknowledged that by virtue of commencing employment with USI, they had received and would continue to receive, a direct financial benefit and other good and valuable consideration.

20.     Pursuant to Section 2.3 of the Producer Agreements, Werner and Jared Fisher each acknowledged that they had a duty of loyalty to USI and that they were required to discharge their duties under the Producer Agreements in good faith. Werner and Jared Fisher agreed to perform their obligations under the Producer Agreements loyally and in good faith.

21.     The Producer Agreements also expressly obligated Werner and Jared Fisher to protect USI's Confidential Information which is defined as:

> At any date, any information of the Company or any Predecessor, or information of a USI Company to which Producer has access, that is not already generally available to the public (unless such information has entered the public domain and become available to the public through fault of the Party to be charged hereunder), including but not limited to: i) the identity, authority and responsibilities of key contacts and decision-makers employed by Client Accounts or Active Prospective Clients of the Company or any Predecessor; ii) the types, terms, and conditions of coverage and particularized insurance needs, requirements, risk specifications, preferences, expiration dates, claims and loss histories, and commission rates, fees and premiums of Client Accounts or Active Prospective Clients of the Company or any Predecessor; iii) the terms and conditions of the benefits and compensation plans of Client Accounts or Active Prospective Clients of the Company or any Predecessor; iv) information furnished to the Company or any Predecessor in confidence by any Client Account or Active Prospective Client; v) the business plans, marketing strategies, and pricing structure, criteria and formulae for insurance and benefits products and claims management, and unpublished financial data and statements of the Company, its corporate affiliates, or any Predecessor; vi) lists of Client Accounts or Active Prospective Clients of the Company and any Predecessor, and any analyses and compilations thereof; vii) information that is password-protected; viii) any and all other proprietary information of the Company, any Predecessor, or a USI Company, including any information contained within a proprietary database. Both parties agree that all such information, documents, or materials constitute trade secrets within the meaning of the Uniform Trade Secrets Act as codified in N.D. Cent. Code ch. 47-25-1.

(*See* Exhibit A; *See* Exhibit B)

22.     Specifically, pursuant to Section 7.1 of the Producer Agreements, Werner and Jared Fisher agreed that all Confidential Information to which Werner and Jared Fisher had access to, received, or generated during their employment with USI was, is and shall remain the sole property of USI and/or other USI affiliated entities, and must remain with USI and/or other USI affiliated entities upon conclusion of their employment.

23.     Pursuant to Section 7.2 of the Producer Agreements, Werner and Jared Fisher agreed that during the course of their employment they would not use, copy or disclose any Confidential Information except in the normal course of business on behalf of USI in accordance with the terms of the Producer Agreements and their respective duty of loyalty to USI. Werner and Jared Fisher also agreed to not copy for themselves any Confidential Information, nor send Confidential Information to themselves unless done in a manner consistent with their respective duties of loyalty to USI.

24.     Pursuant to Section 7.3 of the Producer Agreements, Werner and Jared Fisher agreed that upon conclusion of their respective employment with USI, any and all copies, summaries, notes, computer files, and data and all other documents and media containing Confidential Information in Werner or Jared Fisher's possession shall be immediately surrendered to USI whether originally provided by USI or prepared by Werner or Jared Fisher. Any and all remaining computer files, data, or other electronic media remaining within Werner or Fisher's possession and containing Confidential Information shall thereafter be destroyed. Werner and Jared Fisher also agreed that for the period of five (5) years after such completion, Werner and Jared Fisher shall not use or disclose any Confidential Information retained.

25.     Pursuant to Section 8.1 of the Producer Agreements, Werner and Jared Fisher agreed that each would not, directly or indirectly, solicit the employment, consulting or other services of, or hire, any other employee of USI with whom Werner or Jared Fisher worked or obtained knowledge about as a result of their respective employment with USI or any predecessor, or otherwise influence any of such employees to leave USI's employment or to breach an employment agreement therewith, in each case for employment or engagement by or with a person, as defined in the Producer Agreements, engaged in a competitive business, as defined in the Producer Agreements.

26.     Pursuant to Section 8.2 of the Producer Agreements, Werner and Jared Fisher acknowledged and expressly agreed that they each had fiduciary duties to USI and all USI affiliated entities.

27.     Pursuant to Section 8.4 of the Producer Agreements, Werner and Jared Fisher acknowledged that if a court should refuse to enforce any term of the provisions located within the Producer Agreements, then the unenforceable terms shall be eliminated ("blue penciled") or modified to the extent necessary to permit the remaining terms to be enforced. Werner and Jared Fisher also acknowledged that USI expressly reserved the right to limit the scope of any covenants located within the Producer Agreements, USI expressly reserved the right to limit the scope of any of the covenants located therein unilaterally to ensure enforcement.

28.     Pursuant to Section 9.2 of the Producer Agreements, Werner and Jared Fisher agreed that each had the right to terminate their own employment only by giving USI not less than sixty (60) days' notice prior to any such termination.

29.     The Producer Agreements, taken with any and all amendments, addendums, or other agreements related thereto individually, constitute valid and enforceable contracts under the laws of North Dakota.

**B.      Non-Producer Employees Bentz and Farthing**

30.     In conjunction with the closing of the Sale, USI offered Bentz and Farthing positions as non-producer employees at USI, with Bentz taking the title of Account Representative Commercial 2 and Farthing as Account Representative Personal 2. The positions USI offered to Bentz and Farthing were in the same capacity and working with the same clients as they had for Wells Fargo.

31.     Both Bentz and Farthing's offers were contingent upon their respective acceptance of certain terms and conditions set forth in certain substantially similar Confidentiality and Non-Interference Agreements , each effective as of the Effective Date of the Sale. A true and correct copy of the Confidentiality Agreement executed by Bentz (the "Bentz Confidentiality Agreement") is attached as Exhibit C, and a true and correct copy of the Confidentiality Agreement executed by Farthing (the "Farthing Confidentiality Agreement"), is attached as Exhibit D, (collectively, the "Confidentiality Agreements").

32.     By voluntarily entering into the Confidentiality Agreements, Bentz and Farthing acknowledged that by virtue of commencing employment with USI, they had received and would continue to receive a direct financial benefit and other good and valuable consideration.

33.     Under the Confidentiality Agreements, Confidential Information is defined identically as the definition found in the Producer Agreements (*See* Exhibit A; *See* Exhibit B).

34.     Pursuant to Section 1.1 of the Confidentiality Agreements, Bentz and Farthing agreed that all Confidential Information to which theyhad access to, received, or generated during

their employment with USI is the sole property of USI and/or other USI affiliated entities, and must remain with USI and/or other USI affiliated entities upon completion of their employment.

35.     Pursuant to Section 1.2 of the Confidentiality Agreements, Bentz and Farthing agreed that during the course of their employment they would not use, copy or disclose any Confidential Information except in the normal course of business on behalf of USI in accordance with the terms of the Confidentiality Agreements and their respective duty of loyalty to USI. Bentz and Farthing also agreed to not copy for themselves any Confidential Information, nor send Confidential Information to themselves unless done in a manner consistent with their respective duties of loyalty to USI.

36.     Pursuant to Section 1.3 of the Producer Agreements, Bentz and Farthing agreed that upon completion of their respective employment with USI, any and all copies, summaries, notes, computer files, and data and all other documents and media containing Confidential Information in Bentz and Farthing's possession shall be immediately surrendered to USI whether originally provided by USI or prepared by Bentz and Farthing. Any and all remaining computer files, data, or other electronic media remaining within Bentz and Farthing's possession and containing Confidential Information shall thereafter be destroyed. Bentz and Farthing also agreed that for the period of five (5) years after such completion, Bentz and Farthing shall not use or disclose any Confidential Information retained.

37.     Pursuant to Section 2.1 of the Confidentiality Agreements, Bentz and Farthing agreed that each would not, directly or indirectly, solicit the employment, consulting or other services of, or hire, any other employee of USI with whom Bentz and Farthing worked or obtained knowledge about as a result of their respective employment with USI or any predecessor, or otherwise influence any of such employees to leave USI's employment or to breach an

employment agreement therewith, in each case for employment or engagement by or with a person, as defined in the Confidentiality Agreements, engaged in a competitive business, as defined in the Confidentiality Agreements.

38.    Pursuant to Section 2.2 of the Confidentiality Agreements, Bentz and Farthing acknowledged and expressly agreed that they each had fiduciary duties to USI and all USI affiliated entities.

39.    Pursuant to Section 2.4 of the Confidentiality Agreements, Bentz and Farthing acknowledged that if a court should refuse to enforce any term of the provisions located within the Confidentiality Agreements, then the unenforceable terms shall be eliminated ("blue penciled") or modified to the extent necessary to permit the remaining terms to be enforced. Bentz and Farthing also acknowledged that USI expressly reserved the right to limit the scope of any covenants located within the Confidentiality Agreements, USI expressly reserved the right to limit the scope of any of the covenants located therein unilaterally to ensure enforcement.

40.    The Confidentiality Agreements, taken with any and all amendments, addendums, or other agreements related thereto individually, constitute valid and enforceable contracts under the laws of North Dakota.

C.    **Independent Contractor Martin Fisher**

41.    Between May 3, 2014, and June 30, 2018, Martin Fisher was employed by USI as a producer. Effective June 30, 2018, Martin Fisher voluntarily retired from USI, concluding his employment relationship with USI.

42.    In an independent contractor agreement dated July 1, 2018 ("Martin Fisher Agreement"), Martin Fisher and USI agreed that Martin Fisher would serve as an independent contractor for USI to, *inter alia*, ensure that certain client accounts were transitioned to other USI

producers – most notably his son Jared Fisher – and thereafter retained by USI. A true and correct copy of the Martin Fisher Agreement is attached as Exhibit E.

43.    Pursuant to Section 2 of the Martin Fisher Agreement, the term of the Martin Fisher Agreement was to continue until June 30, 2019 ("Term"), unless terminated earlier in accordance with Section 7 of the Martin Fisher Agreement which, *inter alia*, required at least thirty (30) day written notice by the party seeking to terminate the Martin Fisher Agreement.

44.    By voluntarily entering into the Martin Fisher Agreement, Martin Fisher acknowledged that he had received good and valuable consideration.

45.    Under the Martin Fisher Agreement Agreements, Confidential Information is defined identically as the definition found in the Producer Agreements (*See* Exhibit A; *See* Exhibit B).

46.    Pursuant to Section 5.1 of the Martin Fisher Agreement, Martin Fisher agreed that all premiums, commissions, fees and other forms of compensation, and all Confidential Information to which he had access to, received, or generated during their employment with USI is the sole property of USI and/or other USI affiliated entities, and must remain with USI and/or other USI affiliated entities upon completion of the Term.

47.    Pursuant to Section 5.2 of the Martin Fisher Agreement, Martin Fisher agreed that during the course of Term and for the five (5) year period following the Term he would not use or willfully disclose any Confidential Information except in the normal course of business on behalf of USI, with the prior written consent of USI, or to the extent necessary to comply with law or the valid order of a court of competent jurisdiction.

48.    Pursuant to Section 6.1 of the Martin Fisher Agreement, Martin Fisher agreed that he would not, directly or indirectly, solicit the employment, consulting or other services of, or hire,

any other employee of USI with whom Martin Fisher worked or obtained knowledge about as a result of his status as an independent contractor for USI, or otherwise influence any of such employees to leave USI's employment or to breach an employment agreement therewith, in each case for employment or engagement by or with a person, as defined in the Martin Fisher Agreement, engaged in a competitive business, as defined in the Martin Fisher Agreement.

49.     Pursuant to Section 6.4 of the Martin Fisher Agreement, Martin Fisher acknowledged that if a court should refuse to enforce any term of the provisions located within the Martin Fisher Agreement, then the unenforceable terms shall be eliminated ("blue penciled") or modified to the extent necessary to permit the remaining terms to be enforced. Martin Fisher also acknowledged that USI expressly reserved the right to limit the scope of any covenants located within the Martin Fisher Agreement, USI expressly reserved the right to limit the scope of any of the covenants located therein unilaterally to ensure enforcement.

50.     The Martin Fisher Agreement, taken with any and all amendments, addendums, or other agreements related thereto individually, constitutes a valid and enforceable contract under the laws of North Dakota.

**D.     Duplicitous Behavior, Agreement Breaches, and Resignations**

51.     Between the Effective Date of the Sale through November 30, 2018, Bentz, Farthing, Werner and Jared Fisher remained employed with USI. Additionally, between July 1, 2018 through November 30, 2018, Martin Fisher remained an independent contractor of USI.

52.     Upon information and belief, as of on or about November 8, 2018, the Terminating Employees were negotiating with Choice Financial Group, Inc. ("Choice") for employment, with the Terminating Employees conspiring to take USI's Confidential Information with them to their new employer. True and correct copies of emails dated November 9, 2018 between Farthing, and

Choice representatives, Chris Kildahl, Samantha Berg, and Chuck Klabo, referencing the November 8 meeting is attached hereto as Exhibit F.

53.     Choice is a financial services company based in Fargo, North Dakota, and is a direct competitor to USI in the insurance brokerage marketplace.

54.     Upon information and belief, following the meeting on November 8, Werner, Jared Fisher, and Martin Fisher planned a trip to Houston, Texas ("Houston Trip") with Choice's Chief Strategy Officer, Mike Boub, for November 27, 2018 – while the Terminating Employees remained affiliated with USI. A true and correct copy of an email dated November 8, 2018 confirming the meeting is attached as Exhibit G.

55.     Upon information and belief, the scheme for the Houston Trip was developed throughout the month of November, 2018.  The purpose of the Houston Trip was, at least in part, for Werner, Jared Fisher, Martin Fisher, to promote Choice and its Chief Strategy Officer to the Berkley Insurance Company ("Berkley") and AmWINS Group, Inc. ("AmWINS"). A true and correct email dated November 16, 2018 from Mike Boub outlining the plan for the Houston Trip is attached hereto as Exhibit H.

56.     Berkley and AmWINS are both insurance companies, whose products are sold by USI.

57.     While simultaneously planning the Houston Trip, the Terminating Employees took measures to misappropriate USI's Confidential Information and to ensure access to the same following their resignation and to facilitate their subsequent employment with Choice.

58.     For instance, both Bentz and Farthing, unbeknownst to USI, communicated a known falsehood about an impending "system conversion" to USI clients to entice them to warehouse USI's Confidential Information on their network.  Bentz and Farthing both falsely

relayed to USI's clients that such warehousing measures were necessary to avoid potential hindrances to "data transfer" and prevent the Terminating Employees from having to "start from scratch again" should the fabricated "system conversion" fail. Both Bentz and Farthing asked USI clients to return the information after the "system conversion" was over. A true and correct copy of an email dated November 9, 2018 from Lesley Bentz is attached as <u>Exhibit I</u>. A true and correct copy of an email dated November 27, 2018 from Ashley Farthing is attached as <u>Exhibit J</u>. A true and correct copy of an email dated November 28, 2018 from Ashley Farthing is attached as <u>Exhibit K</u>. A true and correct copy of an email dated November 28, 2018, from Bentz to Martin Fisher is attached hereto as <u>Exhibit L</u>.

59.     Neither before, contemporaneously, nor after these warehousing requests were made by the Terminating Employees was any such system conversion being planned by USI. Even in the event of any system conversion, USI has never and would not ever ask individual clients to warehouse USI's Confidential Information.

60.     Upon information and belief, the Terminating Employees were aware of the illicitness of their actions, as, by an email dated November 20, 2018, Martin Fisher sent a copy of the Martin Fisher Agreement to Dan Werner telling Dan to give "it to his attorney buddy," and that "if possible, it would be nice to have his initial thoughts this week before we travel next week. A true and correct copy of the November 20, 2018 email is attached as <u>Exhibit M</u>.

61.     Additionally, on at least one occasion Werner sent Confidential Information from his USI email address to his personal email address. A true and correct copy of the email dated November 29, 2018 from Werner to dcwerner@bis.midco.net is attached as <u>Exhibit N</u>.

62.     Upon information and belief, Werner, Fisher, and Martin Fisher did go on the Houston Trip on or about November 27, 2018.

63.     Upon information and belief, after the Houston Trip, the Terminating Employees implemented their duplicitous plan to leave USI with Confidential Information in-hand and bring it to their new employer, who, upon information and belief, is Choice.

64.     On or about November 30, 2018 the Terminating Employees each submitted to USI letters tendering their respective resignations from USI. A true and correct copy of the Terminating Employees' resignation letters are attached as Exhibit O–S (Jared Fisher, Werner, Bentz, and Farthing, and Martin Fisher, respectively).

65.     None of the resignation letters tendered by any of the Terminating Employees contained any advanced notice of their termination.

66.     Upon information and belief, subsequent to their resignation from USI, the Terminating Employees have taken employment with Choice or are currently in the process of negotiating such employment. A true and correct copy of the employment offer letter from Choice to Bentz is attached as Exhibit T. A true and correct copy of the employment offer letter from Choice to Farthing is attached as Exhibit U.

67.     Upon information and belief, one or more of the Terminating Employees directly or indirectly solicited, called upon, contacted, and/or attempted to persuade one or more clients serviced while employed by USI, to move their business from USI to Choice.

68.     Upon information and belief, one or more of the Terminating Employees directly or indirectly solicited the other Terminating Employees and other USI employees and/or independent contractors to persuade one or more of such individuals to breach their respective employment and/or independent contractor agreements entered into with USI.

69.     USI is now in a vulnerable position with the potential for continued loss of business and harm to its goodwill due to the Terminating Employees' individual and collective actions. The

transfer of clients, customers and related Confidential Information to one of USI's competitors has

and will continue to diminish USI's position in the marketplace, undermine its goodwill and cause

USI damage

### COUNT I
### VIOLATION OF N.D. CENT. CODE § 34-02-14 –
### WERNER AND JARED FISHER

70.    Paragraphs 1-69 are hereby incorporated by reference.

71.    Pursuant to N.D. Cent. Code § 34-02-14, both Werner and Jared Fisher owed USI

a duty of loyalty to maintain the privacy of Confidential Information, and to not solicit USI's

clients for their own self without USI's consent.

72.    Werner and Jared Fisher each acknowledged that they owed USI a duty of loyalty

under Section 2.4 of the Producer Agreements.

73.    The contractual duty of loyalty owed by Werner and Jared Fisher under the

Producer Agreements required they perform their obligations under the Producer Agreements in

good faith and in a manner at all times promoting the best interests of USI.

74.    Werner and Jared Fisher additionally acknowledged the existence of fiduciary

duties they owed USI under Section 8.2 of the Producer Agreements.

75.    By planning and undertaking the solicitation of USI clients at the expense of USI,

without USI's consent, and disclosing and/or otherwise copying USI's Confidential Information,

and by soliciting and inducing other employees to leave USI's employ, Werner and Jared Fisher

each breached their respective duties owed to USI.

76.    Werner and Jared Fisher's breaches of their respective duties of loyalty have caused

injury, loss, and damage to USI's business in excess of $75,000.00.

### COUNT II
### VIOLATION OF N.D. CENT. CODE § 34-02-14 –

## BENTZ AND FARTHING

77. Paragraphs 1-76 are hereby incorporated by reference.

78. Pursuant to N.D. Cent. Code § 34-02-14, both Bentz and Farthing owed USI a duty of loyalty to maintain the privacy of Confidential Information, and to not solicit USI's clients for their own self without USI's consent.

79. Bentz and Farthing acknowledged the existence of fiduciary duties they owed USI under Section 2.2 of the Confidentiality Agreements.

80. The contractual fiduciary duties owed by Bentz and Farthing under the Confidentiality Agreements required they perform their obligations under the Confidentiality Agreements in good faith and in a manner at all times promoting the best interests of USI.

81. By planning and undertaking the solicitation of USI clients at the expense of USI, without USI's consent, and disclosing and/or otherwise copying USI's Confidential Information, and by soliciting and inducing other employees to leave USI's employ, Bentz and Farthing each breached their respective duties owed to USI.

82. Bentz and Farthing's breaches of their respective duties of loyalty have caused injury, loss, and damage to USI's business in excess of $75,000.00.

## COUNT III
## BREACH OF CONTRACT
## CONFIDENTIALITY PROVISIONS – WERNER AND JARED FISHER

83. Paragraphs 1-82 are hereby incorporated by reference.

84. Werner and Jared Fisher are each parties to certain Producer Agreements.

85. Each of the Producer Agreements executed by Werner or Jared Fisher constitutes a valid and enforceable contract and was in place at the time Werner and Jared Fisher voluntarily resigned from their employment with USI.

86.    Pursuant to Section 7.1 of their respective Producer Agreements, Werner and Jared Fisher agreed, *inter alia*, to allow all Confidential Information to which Werner and Jared Fisher had access, received, or generated to remain with USI upon completion of their employment.

87.    Pursuant to Section 7.2 of their respective Producer Agreements, Werner and Jared Fisher agreed, *inter alia* to not use, copy, or disclose any Confidential Information except in the normal course of business on behalf of USI in accordance with the terms of the Producer Agreements and their respective duties of loyalty owed to USI, nor copy for themselves or send themselves any Confidential Information unless done in a manner consistent with their respective duties of loyalty owed to USI.

88.    Pursuant to Section 7.3 of the Producer Agreements, Werner and Jared Fisher agreed that upon termination of their employment with USI, Werner and Jared Fisher would be immediately surrender to USI any and all copies, summaries, notes, computer files, and data and all other documents and media containing Confidential Information in Werner and/or Jared Fisher's possession, and that any remaining electronic media containing Confidential Information within their possession would be destroyed.

89.    Upon information and belief, Werner and Jared Fisher each breached Section 7.1, 7.2, and 7.3 of their respective Producer Agreements by, *inter alia*, taking steps to retain Confidential Information following the termination of their respective employments with USI and sending Confidential Information to their personal email addresses.

90.    As a direct and proximate cause of Werner and Jared Fisher's conduct, each individual has materially breached his executed Producer Agreement.

91.    Werner and Jared Fisher's respective breaches of their individual Producer Agreements have caused injury, loss, and damage to USI's business in excess of $75,000.00.

## COUNT IV
## BREACH OF CONTRACT
## CONFIDENTIALITY PROVISIONS – MARTIN FISHER

92.    Paragraphs 1-91 are hereby incorporated by reference.

93.    Martin Fisher and USI are each parties to the Martin Fisher Agreement.

94.    The Martin Fisher Agreement constitutes a valid and enforceable contract and was in place at the time Martin Fisher voluntarily terminated the Martin Fisher Agreement.

95.    Pursuant to Section 5.1 of the Martin Fisher Agreement, Martin Fisher agreed, *inter alia*, to allow all Confidential Information to which Werner and Jared Fisher had access, received, or generated to remain with USI upon termination of the Martin Fisher Agreement.

96.    Pursuant to Section 5.2 of the Martin Fisher Agreement, Martin Fisher agreed, *inter alia* to not use, or willingly disclose any Confidential Information except in the normal course of business on behalf of USI.

97.    Upon information and belief, Martin Fisher breached Section 5.1 and 5.2 of the Martin Fisher Agreement by, *inter alia*, taking steps to retain Confidential Information following the termination of the Martin Fisher Agreement.

98.    As a direct and proximate cause of Martin Fisher's conduct, he has materially breached the Martin Fisher Agreement.

99.    Martin Fisher's breach of the Martin Fisher Agreement has caused injury, loss, and damage to USI's business in excess of $75,000.00.

## COUNT V
## BREACH OF CONTRACT
## CONFIDENTIALITY PROVISIONS – BENTZ AND FARTHING

100.    Paragraphs 1-99 are hereby incorporated by reference.

101.    Bentz and Farthing are each parties to certain Confidentiality Agreements.

102.    Each of the Confidentiality Agreements executed by Bentz and Farthing constitutes a valid and enforceable contract and was in place at the time Bentz and Farthing voluntarily resigned from their employment with USI.

103.    Pursuant to Section 1.1 of their respective Confidentiality Agreements, Bentz and Farthing agreed, *inter alia*, to allow all Confidential Information to which Bentz and Farthing had access, received, or generated to remain with USI upon termination of their employment.

104.    Pursuant to Section 1.2 of their respective Confidentiality Agreements, Bentz and Farthing agreed, *inter alia* to not use, copy, or disclose any Confidential Information except in the normal course of business on behalf of USI in accordance with the terms of the Confidentiality Agreements and their respective duties of loyalty owed to USI, nor copy for themselves or send themselves any Confidential Information unless done in a manner consistent with their respective duties of loyalty owed to USI.

105.    Pursuant to Section 1.3 of the Confidentiality Agreements, Bentz and Farthing agreed that upon termination of their employment with USI, Bentz and Farthing would be immediately surrender to USI any and all copies, summaries, notes, computer files, and data and all other documents and media containing Confidential Information in Bentz and/or Farthing's possession, and that any remaining electronic media containing Confidential Information within their possession would be destroyed.

106.    Upon information and belief, Bentz and Farthing each breached Section 1.1, 1.2, and 1.3 of their respective Confidentiality Agreements by, *inter alia*, taking steps to retain Confidential Information following the termination of their respective employments with USI and sending Confidential Information to their personal email addresses. As a direct and proximate

cause of Bentz and Farthing's conduct, each individual has materially breached their executed Confidentiality Agreement.

107.    Bentz and Farthing's respective breaches of their individual Confidentiality Agreements have caused injury, loss, and damage to USI's business in excess of $75,000.00.

## COUNT VI
## BREACH OF CONTRACT
## NON-INTERFERENCE PROVISIONS – WERNER AND JARED FISHER

108.    Paragraphs 1-107 are hereby incorporated by reference.

109.    Werner and Jared Fisher are each parties to certain Producer Agreements.

110.    Each of the Producer Agreements executed by Werner or Fisher constitutes a valid and enforceable contract and was in place at the time Werner and Jared Fisher voluntarily resigned from their employment with USI.

111.    By way of Section 8.1 of their respective Producer Agreements, Werner and Jared Fisher agreed, *inter alia*, to refrain from directly or indirectly soliciting the employment, consulting or other services of, or hiring, any other employee of USI with whom Werner and Jared Fisher worked or obtained knowledge about as a result of their respective employment with USI or any predecessor, or otherwise influencing any of such employees to leave USI's employment or to breach an employment agreement therewith.

112.    Upon information and belief, Werner and Jared Fisher each breached Section 8.1 of their respective Producer Agreements by soliciting and/or otherwise influencing the other Terminating Employees and other employees and/or independent contractors into leaving employment with USI and breaching employment agreements entered into therewith.

113.    As a direct and proximate cause of Werner and Jared Fisher's conduct, each individual has materially breached his executed Producer Agreement.

114.    Werner and Jared Fisher's respective breaches of their individual Producer Agreements have caused injury, loss, and damage to USI's business in excess of $75,000.00.

**COUNT VII**
**BREACH OF CONTRACT**
**NON-INTERFERENCE PROVISIONS – BENTZ AND FARTHING**

115.    Paragraphs 1-114 are hereby incorporated by reference.

116.    Bentz and Farthing are each parties to certain Confidentiality Agreements.

117.    Each of the Confidentiality Agreements executed by Bentz and Farthing constitutes a valid and enforceable contract and was in place at the time Bentz and Farthing voluntarily resigned from their employment with USI.

118.    By way of Section 2.1 of their respective Confidentiality Agreements, Bentz and Farthing agreed, *inter alia*, to refrain from directly or indirectly soliciting the employment, consulting or other services of, or hiring, any other employee of USI with whom Bentz and Farthing worked or obtained knowledge about as a result of their respective employment with USI or any predecessor, or otherwise influencing any of such employees to leave USI's employment or to breach an employment agreement therewith.

119.    Upon information and belief, Bentz and Farthing each breached Section 2.1 of their respective Confidentiality Agreements by soliciting and/or otherwise influencing the other Terminating Employees and other employees and/or independent contractors into leaving employment with USI and breaching employment agreements entered into therewith.

120.    As a direct and proximate cause of Bentz and Farthing's conduct, each individual has materially breached her executed Confidentiality Agreement.

121.    Bentz and Farthing's respective breaches of their individual Confidentiality Agreements have caused injury, loss, and damage to USI's business in excess of $75,000.00.

## COUNT VIII
## BREACH OF CONTRACT
## NOTICE PROVISION – WERNER AND JARED FISHER

122.    Paragraphs 1-121 are hereby incorporated by reference.

123.    Werner and Jared Fisher are each parties to certain Producer Agreements.

124.    Each of the Producer Agreements executed by Werner or Jared Fisher constitutes a valid and enforceable contract and was in place at the time Werner and Jared Fisher voluntarily resigned from their employment with USI.

125.    Pursuant to Section 9.2 of the Producer Agreements, Werner and Jared Fisher agreed to give no fewer than sixty (60) days' notice prior to any voluntary termination of their employment with USI.

126.    By submitting their immediately effective resignations on November 30, 2018, Werner and Jared Fisher each failed to give the required sixty-day notice prior to termination of their employment.

127.    As a result of Werner and Jared Fisher's conduct, Werner and Jared Fisher breached the Producer Agreements.

128.    Werner and Jared Fisher's respective breaches of their individual Producer Agreements have caused injury, loss, and damage to USI's business in excess of $75,000.00.

## COUNT IX
## BREACH OF CONTRACT
## NOTICE PROVISION – MARTIN FISHER

129.    Paragraphs 1-128 are hereby incorporated by reference.

130.    Martin Fisher is party to the Martin Fisher Agreement

131.    The Martin Fisher Agreement constitutes a valid and enforceable contract and was in place at the time Martin Fisher voluntarily terminated his independent contractor relationship with USI.

132.    Pursuant to Section 7 of the Martin Fisher Agreement, Martin Fisher agreed to give no fewer than sixty (30) days' notice prior to any voluntary termination of the Martin Fisher Agreement.

133.    By submitting his immediately effective resignations on November 30, 2018, Martin Fisher failed to give the required thirty-day notice prior to termination of their employment.

134.    As a result of Martin Fisher's conduct, Martin Fisher breached the Martin Fisher Agreement.

135.    Martin Fisher's breach of the Martin Fisher Agreement has caused injury, loss, and damage to USI's business in excess of $75,000.00.

### COUNT X
### UNLAWFUL INTERFERENCE WITH BUSINESS
### ALL DEFENDANTS

136.    Paragraphs 1-135 are hereby incorporated by reference.

137.    USI has valid business relationships and expectancies with the clients whom were requested to warehouse Confidential Information by the Terminating Employees.

138.    Given that each of the Terminating Employees had close business relationships with these clients, the Terminating Employees were aware of those relationships and expectancies.

139.    Because the warehousing requests constituted breaches of contract by the Terminating Employees and otherwise were in violation of their respective duties of loyalty and other fiduciary duties owed to USI, the warehousing requests were independently tortious or unlawful.

140.    The Terminating Employees' warehousing requests have detrimentally harmed and disrupted the business relationship between USI and the clients, and constituted unlawful interference with these business relationships.

141.    As a result of this interference, USI has suffered injury, loss, and damages in an amount in excess of $75,000.00.

### REQUEST FOR RELIEF

WHEREFORE, USI respectfully requests that the Court grant the following relief:

1.    Enter a judgment in favor of USI and against the Terminating Employees on all counts in an amount to be determined at trial in excess of $75,000.00 and to pay damages to USI, including, but not limited to, compensatory damages, attorneys' fees, interest, and reasonable costs and disbursements;

2.    Grant all other relief the Court deems just and proper in the premises.


Respectfully submitted,

Dated: December 5, 2018          ROBINS KAPLAN LLP

                                 */s/ Timothy Q. Purdon*
                                 Timothy Q. Purdon (ND #05392)
                                 1207 West Divide Avenue
                                 Suite 200
                                 Bismarck, ND 58503
                                 T: (701) 255-3000
                                 F: (612) 339-4181
                                 TPurdon@RobinsKaplan.com


                                 BARNES & THORNBURG LLP

                                 Christopher W. Fowlkes
                                 *(pro hac vice forthcoming)*

                                 Jason Clag
                                 *(pro hac vice forthcoming)*

24

Shane T. Solinger
*(pro hac vice forthcoming)*

225 South Sixth Street
Suite 2800
Minneapolis, MN 55402
T: (612) 333-2111
F: (612) 333-6798
christopher.fowlkes@btlaw.com
jason.clagg@btlaw.com
shane.solinger@btlaw.com

*Attorneys for Plaintiff USI Insurance Services LLC*