IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| USI Insurance Services LLC, | ) |
| | ) |
| | ) **ORDER DENYING MOTION** |
| Plaintiff, | ) **FOR SANCTIONS** |
| | ) |
| vs. | ) |
| | ) |
| Lesley Bentz, et al., | ) |
| | ) Case No.: 1:18-cv-255 |
| Defendants. | ) |

Before the Court is Defendants' Motion for Sanctions Concerning Intentional Spoliation. (Doc. No. 130). For the reasons given below, the motion is **DENIED**.

I.   BACKGROUND

   A.   **Underlying Litigation**

The underlying litigation stems from the resignation of several individuals from Plaintiff USI Insurance Services LLC ("USI") in order to work for Defendant Choice Financial Group ("Choice"). See generally Doc. No. 102. USI brought suit against its former employees and/or independent contractors Lesley Bentz, Ashley Farthing, Daniel Werner, Jared Fisher, and Martin Fisher ("Departing Defendants") and eventually Choice itself. See id. USI's allegations include breach of duty of loyalty, breach of contract, and unlawful interference with business, among other counts. See id. Defendants filed a counterclaim alleging breach of contract and statutory employer duties, violations of unfair insurance practices act, and other counts. See Doc. No. 78.

   B.   **Procedural History**

On July 7, 2020, USI filed a Motion to Compel Discovery. (Doc. No. 110). Together with their response to USI's motion, Defendants filed this Motion for Sanctions. (Doc. No. 130). USI

1

responded on August 21, 2020, and Defendants replied on September 4, 2020. (Doc. Nos. 140, 158).

### C. Discovery Background

The below facts are gleaned from the record in this case. These facts are largely undisputed, with any exceptions explicitly noted.

The resignation of Departing Defendants from USI occurred on November 30, 2018. See Doc. No. 133-1. On December 1, USI's General Counsel, Christopher Murray, sent letters to the Departing Defendants demanding they preserve their potentially relevant electronically-stored information ("ESI"). See id. On December 5, counsel for Departing Defendants and Choice likewise sent a letter demanding that USI preserve its ESI. See Doc. No. 133-2. The lawsuit was filed the next day. (Doc. No. 1).

At the time these letters were exchanged, USI's General Counsel Christopher Murray failed to issue a litigation hold or a similar communication to USI's employees. See Doc. No. 143, ¶ 5. In a later affidavit, Murray characterized this omission as an oversight for which he is culpable, explaining that he had not believed that USI employees would have had substantive communications on relevant issues through personal texts or emails, but only through USI emails which are automatically retained on USI servers. See id. at ¶¶ 5-8.

The parties engaged in extensive discovery in the months after the case was filed. The Court issued various rulings regarding the parameters of discovery and held a number of status conferences through early-to-mid 2019. See, e.g., Doc. Nos. 33, 34, 39, 45, and 46. Most of these status conferences were informal proceedings, for which no official transcript was produced.

One status conference was held on August 2, 2019. (Doc. No. 46). The August 2, 2019 status conference is invoked repeatedly in Defendants' briefing. While the parties disagree as to

its exact import, the parties *do* agree that counsel for USI generally agreed during this conference to seek responsive text messages and personal emails from its employees. See Doc. No. 131, Defendants' brief, p. 11 ("Attorney Fowlkes made clear to the Court yet again that he would both request personal texts and emails and have his clients search those devices,") see also Doc. No. 140, USI's brief, p. 15, ("Mr. Fowlkes stated that USI would go to its employees to see if any had responsive texts or personal account emails.")

On September 4, 2019, counsel for USI sent a letter to counsel for Defendants with proposed search terms to be applied to the personal cell phones and email accounts of Departing Defendants and Choice Defendants. See Doc. No. 112-9.

In November 2019, counsel for USI asked certain USI employees (apparently identified in one of Defendants' discovery requests) to search their text messages and personal email accounts for responsive documents. See Doc. No. 143, ¶ 10. A follow-up request was made in March 2020[1] which included two additional employees who were not contacted the first time. Id. at ¶ 11. These searches and their results were detailed in a letter written by USI's attorney Christopher Lynch on May 14, 2020. See Doc. No. 133-12, p. 8.

The Court has reviewed his account of the November 2019 and March 2020 searches and summarizes it as follows. Most USI employees confirmed they did not have any responsive personal emails or texts, with the following exceptions: 1) USI employee Donald Woods found an email sent to Departing Defendant Jared Fisher with photographs of his dog, which was produced; 2) two USI employees thought it was possible that they had exchanged text messages with Departing Defendants confirming the time and place of meetings, but neither employee

---

[1] USI refers to this second search as occurring in "March 2019," but this appears to be an error, since it is unequivocally described as taking place *after* the December 2019 search.

3

retained these texts; 3) four USI employees found potentially responsive text messages, which were produced; and, 4) one USI employee who was not asked to search his phone until March 2020, Marc Engel, stated that he regularly deleted text messages, but says he did not think he exchanged any with clients and provided a list of text messages to confirm this. See id.

On February 26, 2020, counsel for Defendants deposed Marc Engel, a producer at USI. See Doc. No. 133-5, p. 6. At his deposition, Engel testified that no one from USI ever searched his laptop or his phone, nor did he remember anyone from USI advising him to retain electronic data relevant to the case. See id. at p. 30-31.

On February 27, 2020, counsel for Defendants deposed Dean Vander Plas, an executive vice president at USI. See Doc. No. 133-4; see also Doc. No. 142, ¶ 1. At his deposition, Vander Plas testified that no one from USI ever requested his laptop or cell phone to search them. (Doc. No. 133-4, p. 36). He said that he did receive an email at some point in 2019 from Christopher Murray asking him to preserve computer and cell phone data. Id. at 35.

As explained above, sometime in the following month, the last two USI employees were contacted about responsive texts, including Marc Engel.

According to Defendants, the February 2020 depositions of Marc Engel and Dean Vander Plas were the first indication that the alleged spoliation occurred, and this motion followed in July 2020.

**II. GOVERNING LAW**

Rule 37 of the Federal Rules of Civil Procedure provides procedures for imposition of sanctions against parties for failures in the discovery process. At issue here is Fed. R. Civ. P. 37(e), which governs sanctions for failures to preserve electronically stored information ("ESI").

Rule 37(e) dictates:

>   (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>   (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
>   (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>   (A) presume that the lost information was unfavorable to the party;
>
>   (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>   (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

As is evident from the structure of the rule, the Court must make certain initial findings before imposing any sanctions, and additional findings before imposing more severe sanctions. First, before granting any sanctions, the Court must find that the requirements of the first paragraph are met. See Kramer v. Ford Motor Co., 2016 WL 7163084, at *2 (D. Minn. Feb. 3, 2016) ("The Court cannot grant Plaintiffs sanctions pursuant to Rule 37(e) unless there is a finding that the electronic stored information is 'lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery ...'") (citing Fed. R. Civ. P. 37(e)).

Further, before ordering measures to cure prejudice caused to one party as specified in 37(e)(1), the Court must first make a finding of prejudice. See id. Prejudice may be shown

merely by the nature of the evidence that was lost. Merfeld v. Dometic Corp., 306 F. Supp.3d 1070, 1085 (N.D. Iowa 2018), aff'd, 940 F.3d 1017 (8th Cir. 2019) (citing Stevenson v. Union Pac. R. Co., 354 F.3d 739, 748 (8th Cir. 2004)). There is no prejudice if there is no support for the speculation that the destroyed evidence would have affected the litigation. Merfeld, 306 F.Supp.3d at 1085, citing Gallagher v. Magner, 619 F.3d 823, 844 (8th Cir. 2010) (finding no prejudice where there was no "basis for inferring that the missing emails would be of a different character than the emails already recovered and produced."). But if the lost or missing evidence "would be different or more helpful to the party claiming spoliation" than the evidence already in existence, prejudice likely exists. Merfeld, 306 F. Supp.35 at 1085.

Before ordering any of the severe sanctions found in Rule 37(e)(2), such as dismissal of the case or an adverse jury instruction, the Court must additionally find that the party acted with the intent to deprive another party of the information's use in the litigation. See id. Such a finding is a "high bar;" for instance, an adverse inference instruction "brands one party as a bad actor" and "necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information." Davis v. White, 858 F.3d 1155, 1160 (8th Cir. 2017) (citing Morris v. Union Pac. R.R., 373 F.3d 896, 900 (8th Cir. 2004)).

### III.   ANALYSIS

Defendants request dismissal of the case, or in the alternative, monetary sanctions for their attorney's fees and costs related to discovery, a monetary sanction of deterrence, an adverse inference jury instruction, and the exclusion of Defendants' evidence derived from personal cell phones and computers.

Defendants' most extreme requests, imposition of the sanction of dismissal or an adverse jury instruction, requires the Court to find that USI "acted with the intent to deprive" Defendants

of the information for purposes of the litigation. Fed. R. Civ. P. 37(e)(2). Defendants' less severe requests, monetary sanctions and exclusion of certain evidence, require a finding of prejudice to Defendants from loss of the information. Fed. R. Civ. 37(e)(1). Any of these actions require the Court to make the initial determinations that ESI was lost because USI failed to take reasonable steps to preserve it, and that it "cannot be restored or replaced through additional discovery." Fed. R. Civ. 37(e).

Starting with the initial determination, the Court will proceed sequentially through Rule 37(e) to see what findings, if any, are made, and what sanctions, if any, are to be imposed.

> A. **Whether ESI has been lost because USI failed to take reasonable steps to preserve it, and whether it can be replaced or restored by additional discovery**

The ESI which Defendants claim 1) existed, and 2) was lost, allegedly consists of personal emails and personal text messages sent by USI employees. In their motion and supporting memorandum (Doc. Nos. 130, 131), Defendants' most vehement arguments concern Marc Engel and Dean Vander Plas, whom they characterize as "important witnesses" with ESI on their personal devices which has now been irretrievably lost.

> 1. **Marc Engel**

Marc Engel was a USI employee involved in efforts to maintain USI accounts in North Dakota after the Departing Defendants left the company. See, e.g., Doc. No. 133-5, p. 20-21. He apparently made several trips to the state in the months following Defendants' departure and spoke with USI customers who left for other organizations. See id. at 20-21, 24. Engel had a personal cell phone that is partially financed by USI, and a laptop paid for by USI. See Doc. No. 133-5 at 30-31.

As explained in the Court's discussion of the discovery background, Engel was deposed in February 2020. He was not asked to search his personal devices by USI until March 2020.

Defendants argue that it is "highly likely" Engel used his cell phone and personal laptop in his efforts to preserve clients. (Doc. No. 131, p. 8). As Engel testified at his deposition that he never received a preservation directive from USI after the lawsuit was initiated, and explained that he regularly deletes his text messages, Defendants argue that he must have deleted information that "would be critical evidence in this case." Id. at 9.

USI responds with a declaration from Engel. In it, Engel asserts that he does not use his Yahoo email account for business purposes, even though he accesses it from his USI-issued laptop. See Doc. No. 145, ¶ 6. He states that he only would have emailed USI clients through his USI email account. Id. He asserts that he deletes texts on a "near daily" basis, but he did not exchange any texts with USI clients. Id. at ¶ 7. He also attaches records from his cell phone provider showing the numbers he contacted, claiming none of these are numbers of USI clients. Id. at ¶ 8.

Based on this declaration, it is not clear to the Court that any emails or texts have been lost through USI's failure to issue a preservation request. Engel explicitly states that he did not use his Yahoo account to communicate with clients, nor did he send any texts to clients from his cell phone. He simply says that he used his USI email account, and this seems plausible. It is apparently company policy that USI employees are prohibited from using personal email accounts for work purposes. See Doc. No. 143, ¶ 8.

In their reply, Defendants object to being asked to "take [Engel's] word for it that there was no evidence on those devices," but Defendants have offered no reason to doubt his word. (Doc. No. 158, p. 9, n. 9). While Defendants contend that USI employees were "certainly" using

8

personal email accounts and texts to communicate about matters relevant to this case, USI convincingly argues that USI employees other than the defendants lacked the incentive to avoid use of official channels for their communication. Further, despite Defendants' repeated claims that the missing evidence is "critically important" to their defenses and counterclaims, they do not specify which counterclaim or defense might be bolstered or affected by the purported missing evidence.

In short, while the fact that Engel did not receive a preservation request earlier in the litigation is initially concerning, the Court does not find that any evidence that should have been preserved was lost through a failure to search the personal devices of Mark Engel earlier in the litigation.

### 2. Dean Vander Plas

Vander Plas is another USI employee whom Defendants characterize as "an important witness." He traveled to North Dakota with Engel in December 2018. See Doc. No. 133-4, p. 20. He had a cell phone which was partially financed by USI and a laptop which USI provided. See id. at 35. As explained above, he did receive an email from Christopher Murray asking that he search for texts relating to the lawsuit. See Doc. No. 142, ¶ 2. He performed this search in November 2019 at the request of USI counsel. As he testified at his deposition, no one from USI searched his laptop or searched his cell phone. Defendants state that Vander Plas took no action "in relation to searching for or preserving relevant ESI on cell phones or laptops." (Doc. No. 131, p. 10). As such, they state that the "text messages and emails Vander Plas generated during his efforts to retain business are also now unavailable." Id.

In response, USI refers to Vander Plas's affidavit, wherein he states that he searched his texts and personal emails, both of which predate his employment with USI, and did not find

9

anything relevant to the instant case. See Doc. No. 142 at ¶ 3-5. He also states that he does not use his personal email account for business use and does not "recall" exchanging any texts with Defendants, anyone from USI about Defendants, or any of the North Dakota clients. See id. at ¶ 4-5.

At the very least, Vander Plas's affidavit refutes Defendants' claim that he did nothing to search for relevant ESI. Combined with the facts that he did not use personal email account for business, does not remember exchanging relevant texts, and then searched his texts, dating back to 2018, and was unable to find anything responsive, the Court cannot agree with Defendants' claims that "text messages and emails he generated during his efforts to retain business" are lost. The Court cannot see that any ESI that should have been preserved was lost through Vander Plas's failure to search earlier.

### 3.     Other evidence

In their reply brief, Defendants also bring up USI employee Donald Woods, whose affidavit was submitted with USI's response. (Doc. No. 141). He was one of the four USI employees who had found personal, responsive text messages when performing a search in November 2019. See Doc. No. 133-2, p. 8; Doc. No. 141, ¶ 2.

In his declaration, Woods explains his retrieval of responsive texts. See Doc. No. 141, ¶ 2. He states that he searched his texts "for communications with and about the former USI employees named as Defendants in this lawsuit or with the clients the Defendants serviced while at USI." Id. at ¶ 2. He says he does not recall exchanging any other texts with or about Defendants or their clients; he also states that he does not use his personal email account for business purposes. Id. at ¶ 2-4.

10

Defendants cite Woods' texts messages, attached as Doc. No. 153, and say that they "show an executive who is adept at using the medium of text messaging for USI's business purposes." (Doc. No. 158, p. 9). As such, they argue, he also would have exchanged *other* text messages with his superiors about issues relevant to the lawsuit, and that he failed to disclose these text messages.

Skimming the pages attached, the Court agrees that Woods, unlike Vander Plas and Engel, absolutely did send text messages for USI purposes, although many of the texts also relate to personal messages such as holiday greetings. See, e.g., Doc. No. 153, p. 127, 133. Yet it is unclear to the Court why, if Woods searched his messages and disclosed the numerous texts produced, he would have failed to disclose other texts and then proceeded to lie about them in a sworn affidavit. Defendants state that undisclosed exchanges "certainly would have occurred," but they offer no proof of this. They imply that whatever texts Woods is allegedly hiding are more useful to their case than the texts he produced. But they provide no indication of what these communications might show or how they might affect the case. They provide nothing to show that the hypothetical missing texts are "of a different character" than the texts already disclosed. See Gallagher v. Magner, 619 F.3d 823, 844 (8th Cir. 2010). While Woods, unlike most of the other USI employees, did use personal text messages for work purposes, it appears that he produced them. While arguably he should have been asked to preserve his texts and emails sooner, none of Defendants' arguments concerning Woods convince the Court that ESI that should have been preserved was lost and cannot be replaced.

In relation to Engel, Vander Plas, Woods, and various other USI employees, Defendants make many more sweeping statements, accusing USI of deliberately losing "relevant evidence that went to the heart of its damages claim, to the heart of Defendants' defenses, and to the heart

11

of Departing Defendants' Counterclaim." (Doc. No. 131, p. 7). Yet Defendants provide little indication as to what this evidence might be, what it might show, what claims it might support, or any clue as to its substance. Nor do they distinguish this alleged evidence from the copious productions of official USI communications already produced in this case (discussed below).

Defendants also criticize the fact that USI did not seize the computers and phones of its employees and search them itself, but rather relied on individual employees to perform such searches. The Court does not find anything sanctionable in this decision, nor does it bolster Defendants' claims of lost evidence.

Here, USI has produced at least some responsive text messages and personal emails from employees who acknowledge the use of such communication techniques. They have also provided convincing evidence that for many USI employees, responsive text messages and personal emails did not exist because USI employees, unlike Departing Defendants, are not parties to the case, lacked similar incentives to communicate using their personal devices, and were generally prohibited from using personal email for work purposes by company policy.

In short, the Court is not convinced that any ESI that should have been preserved has been lost and cannot be replaced or restored through additional discovery.

### 4. Conclusion as to 37(e)

It is undisputed that USI failed to send out a litigation hold letter or similar communication, and such an oversight is facially troubling. But even though USI failed to take this "reasonable step," their omission does not appear to have resulted in the loss of ESI that would have been responsive or relevant to the issues in this case, largely because USI employees, with some exceptions, did not use their personal devices for business

communication, and further, what business communication *did* occur over text message appear to have been disclosed.

As such, the Court concludes that the threshold requirement of 37(e) sanctions – finding that electronic stored information is "lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery ..." – has not been met.

Even if the undersigned is wrong and ESI that should have been preserved was lost, Defendants' requests for sanctions still fail. Defendants ask that their own text message and personal email evidence be excluded from evidence in the case, apparently as a 37(e)(1) measure to "cure the prejudice" from USI's alleged failure to preserve allegedly responsive personal texts and emails. But such a measure requires a finding of prejudice, and Defendants do not convince the undersigned that any prejudice has occurred. Beyond repeatedly stating that the missing texts and emails were "critically important," Defendants do not provide any actual support for the contention that such communications would have affected the outcome of the case. There is no prejudice if there is no support for the speculation that the destroyed evidence would have affected the litigation. Merfeld, 306 F.Supp.3d at 1085, citing Gallagher v. Magner, 619 F.3d 823, 844 (8th Cir. 2010). Defendants are unable to show what the missing evidence might be, what it might show, what claims it might support, or any other clue as to its substance. Here, the impact of the evidence and its existence is a product of speculation.

The Court could stop the analysis here. But for argument's sake, the Court will proceed to consider Defendants' arguments for more severe sanctions.

### B. Defendants' Other Claims

Defendants' motion contains many accusations; the Court will briefly address some of Defendants' other claims below.

### 1. Dishonesty to the Court

Defendants repeatedly claim that counsel for USI misled the Court, particularly invoking the statements made at the August 2, 2019 status conference referenced above. But to the extent that counsel for USI did assure the Court that certain USI employees would produce their personal emails, phones, and work emails on August 2, 2019, it appears that these documents were produced in November for all but two employees, three or so months later. While in a perfect world such production would have occurred sooner, a delay of several months is not unreasonable. Furthermore, it is apparent that communications between the parties regarding production of personal texts and emails were ongoing during this time. See, e.g., Doc. No. 112-9 (September 2019 letter from counsel for USI to counsel for Defendants with proposed search terms to be applied to the personal cell phones and email accounts of Departing Defendants and Choice Defendants).

Nor does the Court see anything gravely concerning in USI's response to the Court's brief April 22, 2019 text-only order. See Doc. No. 39. This order concerned USI's subpoena to then-nonparty Choice; it provided broad date parameters but did not contain any explicit mandate for USI to immediately produce its employees' personal texts and emails, instead addressing their response to "prospective requests" by Defendants. See id. As such, the Court does not see how USI deliberately ignored it.

### 2. Production of Official USI emails

In response to USI's claims that responsive evidence would have exclusively occurred through official USI channels and thus been retained on the USI server, Defendants claim that

"the most relevant USI emails" have not been provided. (Doc. No. 131, p. 13). Supporting this contention, Daniel Werner, one of the Departing Defendants, submits an affidavit stating that he has reviewed USI's document production "including emails sent and received by Don Woods and David Silkewski," and states that "only a handful of emails sent by Don Woods" were produced. (Doc. No. 132 at ¶¶ 4, 6).

If this affidavit were substantiated, this accusation might be troubling. But USI rebuts Mr. Werner's statements by providing a listing of the hundreds of emails sent by Don Woods produced by USI. See Doc. No. 146, ¶ 15; Doc. No. 146-11. USI also provides an affidavit from their Messaging Administrator Frank Ciarvadone explaining how USI emails are retained and how emails were searched and produced. See generally Doc. No. 144.

In reply, Defendants acknowledge that USI has produced numerous Woods emails in May and June of 2020 (notably, well before Daniel Werner's July 31st affidavit was signed stating that only a handful had been produced). See Doc. No. 158, p. 11. Defendants then change their criticism of USI, protesting instead that USI failed to provide "specific documents" in response to requests for emails. Id. Apparently, Defendants have not searched the email production themselves, but are instead demanding that only certain emails be provided in the first place. Without delving too deeply into what appears to be the contentious process of haggling over search terms, see generally Doc. No. 140 p. 7-10, it is clear to the Court that Defendants' statements regarding non-production of emails are exaggerated.

### 3. Demands for More Severe Sanctions

Because they have failed to show that any evidence was lost, let alone destroyed, Defendants do not achieve the showing of intentional destruction required for dismissal of the case or an adverse jury instruction contemplated in Rule 37(e)(2). Even if this Court is wrong

and Murray's failure to send out a litigation hold did result in lost evidence, there is not a shred of evidence to indicate that his failure was intentional.

Further, Defendants themselves apparently failed to preserve at least some amount of responsive texts and emails. They state that upon receipt of USI's initial preservation letter predating the lawsuit, they "diligently maintained and preserved, to the extent of their ability, texts and email information." (Doc. No. 131, p. 5). Yet, in response to USI's requests for several specific emails, Defendants candidly admit that they are unavailable "due to the passage of time." See Doc. No.133-10, p. 2-3 (Letter from Defendants' counsel explaining with regards to two requests, "Due to the passage of time, this email message is no longer available. . . Due to the passage of time, these emails, if any, have simply been deleted and no longer exist." )

In short, Defendants' Motion for Sanctions fails to make several requisite showings. USI undoubtedly erred in failing to send out a litigation hold, but Defendants do not offer much beyond the mere undisputed fact of this error. And they offer almost no support at all for their most extreme request, i.e., that the Court dismiss the underlying case.

### C. Conclusion

For all the above reasons, Defendants' Motion for Sanctions (Doc. No. 130) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 29th day of December, 2020.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter
United States Magistrate Judge